Judge Simpson
delivered the opinion of the Court.
The question of most importance in this case is that which involves an inquiry into the validity of the claim asserted by Mrs. Jennings to the slaves Winny and her children. She claims them under a gift from her father, made since the passage of the act of February, 1846, to protect the rights of married women. The creditors of her deceased husband contend that they belong to his estate, or at any rate are. liable for the payment of his debts, as he had them in his possession, prior to his death, during a period of more than five years.
The first question to be determined is at what time was the gift actually made ? Jennings commenced housekeeping in the summer of 1842, at which time the slave Winny, not then having any children, came to his possession. He continued in the possession of her from that time until his death, in 1850; and whilst he had her in possession her children were born. The widow contends that her husband acquired the possession from her father in 1842, under a loan, and that no gift was made until February, 1847, at which time the slaves were given to her by her father, to whom they still belonged.
Upon a careful examination of the testimony on the subject we have come to the conclusion that no gift was made of the slave at the time she originally went into the possession of Jennings, but she was merely loaned to his wife by her father, and that the possession of her continued under that loan until February, 1847, when she and her children were given to Mrs. Jennings by her father.
It is however contended that as the possession of Jennings commenced prior to the passage of. the act of 1846, and continued subsequently until five years had elapsed, that the slaves thereby became liable *480 for the payment of his debts, notwithstanding the possession may have originally commenced under a loan, and the gift to his wife may have been made before the possession under the loan had been continued five years.
1. Slaves acquired by the wife since the passage of the act ofFebruary, 1846, are not liable for the debts of the husband, and the husband’s possession of them for five years will not render them liable for his debts.
2. Where the possession of slaves was acquired from the father of the wife, by the husband onloan before the passage of the act of 1846, and given to the wife after the passage of the said act before the husband had five years possession, they were not liable for his debts. The possession, after the gift, was in right of the wife.
Slaves acquired by the wife since the passage of the act of February, 1846, are not liable for the husband’s debts; they cannot be rendered liable therefor by the husband’s possession of them for five years; the possession, in such a case, is consistent with the right of the wife to the property; it is where the law places it, and it would be an anomaly to permit a possession •which is not only sanctioned by law, but actually acquired under its operation, to have the effect to divest the right of the wife, and to subject the property to the payment of tbe husband’s debts. It would be wholly inconsistent with the intention of the legislature, and virtually defeat the object which the passage of the act was designed to accomplish.
Should then the fact that the possession was originally acquired under a loan, and was commenced before the passage of the act of 1846, render the slaves liable for the husband’s debts, when the possession had been continued five years, although they had been given to the wife after the passage of that act, and before tbe expiration of the five years? We think it should not. When the gift was made the title to the slaves vested in the wife, and tbe possession was subsequently continued under her title. The slaves, at tbe time of the gift, were not liable for the debts of the husband, and any subsequent possession by him did not render them liable, because the possession was not continued under tbe loan but under the title of the wife.
It has been argued that the creditors of the husband were not apprised that the loan had been changed into a gift, the act being of a private nature not evidenced by a deed of record; that the possession of the slaves by the husband gave him a delusive credit, and therefore both the safety of creditors *481 and the policy of the laws require the subjection of the slaves to the payment of the debts of the husband.
3. The aet of 1846 does nofct require a gift of slaves to a feme covert to be evidenced by deed ofrecord;a verbal gift is as effectual as a deed of record.
The act of 1846 exempts slaves which maybe given to the wife from liability for her husband’s debts, whether the gift be oral or by deed. The fact, then, that the gift in this case was not evidenced by a deed of record, cannot alter the law on the subject. And with respect to the credit which the possession of the slaves was calculated to give to the husband, it may be remarked that the same delusion may exist where the slaves have come into the possession of the husband since the passage of the act, under a gift to the wife, as such possession may to some extent give him a delusive credit; but that cannot be permitted to affect the rights of the wife. The passage of this act renders it necessary that persons dealing with the husband shall, before they give him credit in consequence of his having slaves in his possession, institute an inquiry into the nature of the title, and the character of the possession. By the law now existing, the possession of the husband is not even prima facie evidence of the title in himself, so far as the rights of the wife may be affected by it.
The motion to quash the sale of the real estate was properly overruled. It did not certainly appear that it could be sold for a better price, or that any valid reason existed for ordering a re-sale of the property.
Wherefore, the judgment is affirmed..